# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**DAPHNE WEARY**                                                 **CIVIL ACTION**

**VERSUS**

**LUMBER LIQUIDATORS, INC.**                      **NO. 19-00698-BAJ-EWD**

## RULING AND ORDER

This is an employment discrimination case. Plaintiff's Complaint alleges that Defendant Lumber Liquidators unlawfully failed to promote her *and* unlawfully terminated her from her assistant store manager position due to her race (African-American) and age (over 40 years old). Plaintiff has since abandoned her claims of age discrimination and failure to promote, leaving only her claim of unlawful termination due to her race. (*See* Doc. 84 at p. 1).

Now before the Court is Lumber Liquidators' **Motion For Summary Judgment (Doc. 69)**, which argues that Plaintiff's action must be dismissed because she has not shown that race motivated her termination; rather, Plaintiff was fired for poor performance. Plaintiff opposes Lumber Liquidators' Motion. (Doc. 72). For the reasons stated herein, Lumber Liquidators' Motion will be granted, and Plaintiff's action will be dismissed with prejudice.

## I.    BACKGROUND

### A. Summary Judgment Evidence

The following facts are *undisputed*, as set forth in Lumber Liquidators' Statement Of Material Facts As To Which There Is No Dispute (Doc. 66-2, "LL SOF"),

Plaintiff's Statement Of Controverting Facts (Doc. 72-1, "Controverting SOF"), the parties' joint Pre-Trial Order (Doc. 84, "Joint PTO"), and the record evidence submitted in support of these pleadings.

Plaintiff is African-American. (Joint PTO at §F(1)). In January 2017, Lumber Liquidators hired Plaintiff to the role of assistant store manager ("ASM1"), working at Lumber Liquidators' Baton Rouge, Louisiana location. (*Id.* at §F(19)). As an ASM1, Plaintiff's job responsibilities included boosting sales, providing direct customer service, ensuring safe and efficient warehouse operations, and supervising and training lower-level store-managers/salespeople ("ASM2s"). (*Id.* at §F(20)-(21); *see also* Doc. 69-4 at pp. 2-5 (setting forth the "list of key performance expectations required of all Assistant Store Managers")).

In June 2017, five months after hiring Plaintiff, Lumber Liquidators hired Seth Harper to the role of Store Manager, one step above Plaintiff. Harper's responsibilities included supervising Plaintiff. (LL SOF at ¶ 5; Controverting SOF ¶ A(5)). Harper is white. (*Id.*). Soon after he joined Lumber Liquidators, Harper, in turn, hired Garrett Sherman to the role of ASM1. Sherman is also white. (*Id.*). Notably, Sherman's hire resulted in an "overage" of ASM1s at Lumber Liquidators' Baton Rouge store—that is, *two* ASM1s (Plaintiff and Sherman) when the size of the store required only *one* ASM1. (Controverting SOF ¶ C(1)-(2)[1]).

---

[1] Plaintiff sets forth the fact of Lumber Liquidators' ASM1 "overage" at Section C of her Statement of Controverting Facts, and supports this fact with specific citations to internal Lumber Liquidators' emails. (Weary Controverting SOF ¶ C(1)-(2)). The Local Rules governing summary judgment practice required Lumber Liquidators to specifically respond to this "fact", or risk it being deemed admitted for present purposes. *See* M.D. La. LR 56(d), 56(f). Here, Lumber Liquidators has submitted a reply memorandum challenging certain

The parties agree that on January 20, 2018, Harper issued Plaintiff her first "Verbal/Coaching Record." (Joint PTO at §F(11)). And although the parties have not included this "Record" among their summary judgment exhibits, it appears that Harper reprimanded Plaintiff after she returned late from her lunch break. (*See* Controverting SOF ¶ A(5)).

The parties further agree that in late February 2018, Harper conducted a formal review of Plaintiff's job performance during her first year of employment. (LL SOF at ¶ 7; Controverting SOF ¶ A(7)). Harper's review resulted in a Performance Improvement Plan ("PIP") setting forth multiple "areas in which [Lumber Liquidators] determined that [Plaintiff] needed improvement." (*Id.*). More specifically, Plaintiff's PIP informed her that she was "***being placed on a <u>30 day improvement plan</u>***"; specifically identified seventeen deficiencies requiring "immediate attention"; and expressly warned that "***<u>failure to achieve an acceptable level of performance by the conclusion date may result in disciplinary action up to and including termination.</u>*** (Doc. 69-4 at p. 2 (emphasis in original)).

Plaintiff's on-the-job deficiencies ran the gamut of Plaintiff's job responsibilities, and included failing to generate sufficient sales revenue; failing to

---

exhibits cited in Plaintiff's Statement of Controverting Facts (but not the "overage" emails), but has *not* submitted a reply statement of material facts specifically addressing the "facts" set forth in Plaintiff's controverting statement. Accordingly, under Local Rules 56(d) and 56(f), the Court deems the fact of Lumber Liquidators' ASM1 overage *admitted* as set forth in Plaintiff's Statement of Controverting Facts, due to Lumber Liquidators' failure to properly controvert it. *See N. Frac Proppants, LLC v. Regions Bank, NA*, No. 19-cv-00811, 2022 WL 1297180, at *1 n.1 (M.D. La. Apr. 29, 2022) (defendant's proposed facts deemed admitted as written due to plaintiffs' failure to properly support their "qualified" admissions).

consistently approach and invite customers to the store; failing "to use good judgment" in her communications with customers, subordinates, and supervisors; failing to ensure that the warehouse was stocked, "free of debris and clutter," and prepared to promptly fill customer orders; failing to ensure "order accuracy," resulting in delayed order fulfillment; and failing to demonstrate an adequate understanding of company systems for managing inventory across various store locations. (*See* Doc. 69-4 at pp. 2-5).

Harper concluded Plaintiff's PIP with the following "Discussion Notes and Key Action Items," again emphasizing that Plaintiff risked termination if she did not show immediate improvement:

> This document identifies the critical issues (checked items) that Daphne [Plaintiff] must address and correct. To meet overall performance expectations, all elements listed on this document are to be performed at an acceptable level. I (SM [Seth Harper]) will review Daphne's progress on a weekly basis. Failure to take immediate steps to address the issues identified here and or on-going or new issues will result in further corrective action up to and including termination of employment. I am available if Daphne has any questions or if she feels that she needs any reasonable training or accommodation(s) to perform the required elements of her job.

(Doc. 69-4 at p. 5).

Plaintiff was the only Lumber Liquidators employee at the Baton Rouge store to be put on a PIP in February or March of 2018.  (Joint PTO at §F(13)). After presenting Plaintiff her PIP, Harper and Plaintiff met on a weekly basis (four meetings, total) to discuss its contents and Plaintiff's improvement progress. (Joint PTO at §F(14)). The last of these weekly meetings occurred April 3, 2018. (Joint PTO at §F(15)). Despite these weekly meetings, Lumber Liquidators determined that

Plaintiff failed to demonstrate adequate improvement. (LL SOF at ¶ 9; Controverting SOF ¶ A(9)[2]). Accordingly, on June 12, 2018, Lumber Liquidators fired Plaintiff. (*Id.*).

Plaintiff's position was *not* backfilled after her termination. Rather, Plaintiff's discharge reduced the number of ASM1s at Lumber Liquidators' Baton Rouge store to just one (Sherman), thus eliminating the ASM1 "overage" that resulted from Sherman's hire in June 2017. (*See* Joint PTO at ¶ F(17)).

Finally, the parties agree that Plaintiff's employment at Lumber Liquidators did not result in any "direct evidence of race discrimination." (Joint PTO at ¶ F(24) ("Weary has no direct evidence of race discrimination."). Nonetheless, Plaintiff contends, that her race made her the target "right from the start" of her tenure at Lumber Liquidators, and that her termination was the predictable result of Harper's discriminatory animus. (Doc. 72 at pp. 7-8). The question before the Court is whether Plaintiff's *evidence* establishes a sufficient basis to submit her claim to the jury.

## B. Procedural History

On March 6, 2019, Plaintiff filed a charge of race and age discrimination with the Equal Employment Opportunity Commission (EEOC) and the Louisiana Commission On Human Rights. (Doc. 69-6). On July 1, 2019, the EEOC issued Plaintiff a right-to-sue letter. (Doc. 1 at ¶ 4).

Thereafter, on September 30, 2019, Plaintiff initiated this action, alleging that

---

[2] Plaintiff's Statement of Controverting Facts "denies" her "lack of improvement," but fails to direct the Court's attention to any *evidence* supporting her denial. (*See* Weary Controverting SOF ¶¶ 9). Accordingly, consistent with Local Civil Rules 56(c) and 56(f), the Court disregards Plaintiff's bald denial, and deems this fact admitted as stated in Lumber Liquidators' Statement of Material Facts. *See supra,* n.1; *N. Frac Proppants, LLC,* 2022 WL 1297180, at *1 n.1.

Lumber Liquidators failed to promote her to a Store Manager position due to her race and age, and ultimately terminated her due to her race and age. (*See* Doc. 1 at ¶¶ 116-117). As set forth above, Plaintiff has since abandoned her claims of age discrimination and failure to promote. (*See* Doc. 84 at p. 1).

Now Lumber Liquidators moves for summary judgment, arguing that Plaintiff cannot show that race was a motivating factor in her termination. Instead, Plaintiff was fired due to the performance issues set forth in her PIP. (*See* Doc. 69-1 at pp. 4-15).[3] Plaintiff opposes Lumber Liquidators' Motion. (Doc. 72).

## II.    ANALYSIS

### A. Standard

Federal Rule of Civil Procedure ("Rule") 56(a) provides that the Court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If the movant bears its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

---

[3] Alternatively, Lumber Liquidators urges the Court to dismiss Plaintiff's action under the doctrine of judicial estoppel, due to Plaintiff's failure to timely disclose this litigation in her ongoing bankruptcy proceedings. (Doc. 69-1 at pp. 15-18). Certainly, there is support for Lumber Liquidators' position. *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011) ("We have held that judicial estoppel is particularly appropriate where a party fails to disclose an asset to a bankruptcy court, but then pursues a claim in a separate tribunal based on that undisclosed asset." (quotation marks and alterations omitted)); *e.g.*, *Harrah v. DSW Inc.*, 852 F. Supp. 2d 900, 908 (N.D. Ohio 2012) (Nugent, J.) (ruling that plaintiff-debtor was judicially estopped from pursuing employment discrimination claims that were not promptly reported as an asset in plaintiff-debtor's ongoing bankruptcy proceedings). Still, the Court does not reach this argument, based on its determination that Plaintiff's claims fail on their merits, as set forth below.

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587. Stated differently, "[i]f the party with the burden of proof cannot produce any summary judgment evidence on an essential element of [her] claim, summary judgment is required." *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990).

### B. Discussion

Plaintiff alleges that she was unlawfully fired due to her race. In relevant part, Title VII of the Civil Rights Act of 1964 prohibits an employer from discharging an individual "because of such individual's race, color, … or national origin." 42 U.S.C. § 2000e-2(a)(1).[4] Under Title VII, an employer's discriminatory motive can be proved through direct evidence—*i.e.*, a "statement or written document showing a discriminatory motive on its face"—or through circumstantial evidence—*i.e.*, proof requiring the factfinder to determine an employer's discriminatory motive based on "inference or presumption." *See Portis v. First Nat. Bank of New Albany, Miss.*, 34 F.3d 325, 329 (5th Cir. 1994).

Plaintiff expressly concedes that she lacks any "direct evidence of race discrimination." (Joint PTO at ¶ F(24)). Instead, Plaintiff seeks to prove her case

---

[4] Plaintiff does not specify whether she also intends to pursue a claim of unlawful race-based termination under the Louisiana Employment Discrimination Law ("LEDL"). Absent an affirmative representation, the court will not assume that Plaintiff seeks relief under the LEDL. *See N. Frac Proppants, supra* n. 1, 2022 WL 1297180, at *8 n.9 ("[T]his Court has repeatedly admonished that it will not speculate on arguments that have not been advanced, or attempt to develop arguments on a party's behalf."). In any event, the legal analysis is the same, and any claim of unlawful termination under the LEDL would fail for the same reasons that Plaintiff's Title VII claim fails, as set forth below. *See La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 477 (5th Cir. 2002) ("Because the [LEDL] is substantively similar to title VII, the outcome will be the same under the federal and state statutes." (quotation marks omitted)).

7

through circumstantial evidence, according to the burden-shifting framework established by the U.S. Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). (*See* Doc. 72 at p. 1).

"The first step of the *McDonnell Douglas* analysis requires the plaintiff to establish a prima facie case that the defendant made an employment decision that was motivated by a protected factor." *Turner v. Kansas City S. Ry. Co.*, 675 F.3d 887, 892 (5th Cir. 2012) (quotation marks and alterations omitted). If the plaintiff establishes a prima facie case, the Court proceeds to the next stage of the analysis, where "the defendant bears the burden of producing evidence that its employment decision was based on a legitimate nondiscriminatory reason." *Id.* (quotation marks omitted). If the defendant meets its burden of production, "the burden shifts back to the plaintiff to prove that the defendant's proffered reasons were a pretext for discrimination." *Id.* (quotation marks and alterations omitted).

To make a prima facie case of discriminatory discharge, the plaintiff must establish that she: "(1) is a member of a protected class; (2) was qualified for her position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside the protected class, or, in the case of disparate treatment, shows that others similarly situated were treated more favorably." *Okoye v. Univ. of Texas Houston Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001) (quotation marks omitted).

For purposes of argument, Lumber Liquidators essentially concedes the first three elements of Plaintiff's prima facie case. (*See* Doc. 69-1 at pp. 7-8). Still, however,

Lumber Liquidators asserts that Plaintiff's unlawful termination claim fails because nobody replaced Plaintiff after her termination, and because Plaintiff "cannot identify a similarly situated non-African American employee who was treated more favorably than she," nor can she identify any non-African American employee that "committed similar transgressions and was not terminated as a result." (*Id.* at 8).

The Court agrees. Despite having submitted a lengthy opposition memorandum *arguing* that she was treated less favorably than her white co-workers, Plaintiff offers remarkably little *evidence* to support this position. Indeed, despite this action having proceeded for nearly three years, Plaintiff's proposed "facts" underlying her disparate treatment argument are drawn exclusively from a declaration executed by Plaintiff on April 11, 2022, nearly *two years* after the close of fact discovery, and just *one* day before the deadline to oppose Lumber Liquidators' summary judgment motion. (*See* Controverting SOF ¶¶ B(1)-(28)). And while this Circuit's law is clear that the Court cannot merely disregard Plaintiff's belated, self-serving declaration, *see Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021) ("'[S]elf-serving' affidavits and depositions may create fact issues even if not supported by the rest of the record."), a close review makes clear that Plaintiff's declaration cannot, of itself, create fact issue sufficient to send this case to trial.

First, bizarrely, Plaintiff's declaration is submitted part and parcel with her Statement of Controverting Facts, violating this Court's Local Rule requiring that any "additional facts" including in a party's opposing statement of material facts be set forth in separately numbered paragraphs, supported by specific citations to record

9

material. *See* M.D La. LR 56(c), 56(f). Here, Plaintiff's declaration is incorporated directly into her Statement of Controverting Facts, and is not supported by *any* citations to record evidence. (*See* Controverting SOF ¶¶ B(1)-(28)). Standing alone, Plaintiff's failure to adhere to this Court's rules for summary judgment practice is a sufficient basis to disregard Plaintiff's declaration, eliminating any evidentiary support whatsoever for Plaintiff's disparate treatment claim. M.D La. LR 56(f); *see N. Frac Proppants, LLC*, 2022 WL 1297180, at *1 n.1.

Second, aside from Plaintiff's failure to adhere to this Court's Local Rules, Circuit law is clear that a self-serving declaration is *not* sufficient to create a fact issue when it is "conclusory, vague, or not based on personal knowledge." *Guzman*, 18 F.4th at 161. Here, Plaintiff's 28-paragraph declaration suffers sins typically ascribed to a "shotgun pleading," including large swaths of immaterial detail not obviously connected to Plaintiff's cause of action. *See In re Ozcelebi*, 635 B.R. 467, 472 (Bankr. S.D. Tex. 2021) ("[A] shotgun pleading occurs when a complaint is full of conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." (citing *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1322 (11th Cir. 2015)); *see also Garig v. Travis*, No. 20-cv-654, 2021 WL 2708910, at *17 (M.D. La. June 30, 2021) (deGravelles, J.) (same). At best, Plaintiff's scattershot approach renders a muddled (at times, indecipherable) account of the material events preceding her termination, putting her declaration squarely within the category of vague *and* conclusory evidence that generally cannot overcome summary judgment. *See Guzman*, 18 F.4th at 161 & n. 5 (citing authorities).

Finally, and in any event, Plaintiff's declaration fails to set forth specific facts creating a dispute as to the only material issue in play—namely, "whether others similarly situated were treated more favorably" than she was. *Okoye*, 245 F.3d 512–13. Essentially, Plaintiff's disparate treatment argument boils down to two complaints: that her co-workers also made mistakes but were not punished; and that Harper directed discriminatory comments at her on various occasions. (Doc. 72 at pp. 7-14). But Plaintiff's *evidence* of these complaints simply does not add up.

First, to prove less favorable treatment in connection with her wrongful termination claim, Plaintiff must present evidence of a "similarly situated" comparator that was *not* fired despite committing nearly the same misconduct for which Plaintiff was discharged; that is, a non-African American employee working in "nearly identical circumstances" that maintained his job after demonstrating the same poor performance ascribed to Plaintiff. *See Okoye*, 245 F.3d at 514 ("[T]o establish disparate treatment a plaintiff must show that the employer gave preferential treatment to another employee under nearly identical' circumstances; that is, that the misconduct for which the plaintiff was discharged was nearly identical to that engaged in by other employees." (quotation marks and alterations omitted)). Plaintiff's declaration casts a wide net, setting forth various instances when she felt that other Lumber Liquidators employees should have been reprimanded. Among these other employees, however, Sherman is the *only* valid comparator because he is only employee with similar job responsibilities that falls outside Plaintiff's protected class. And as to Sherman, Plaintiff fails to allege *any*

11

misconduct. Rather, Plaintiff complains merely that "Harper designated Sherman …
'in charge' when he [Harper] was not there," and that, on one occasion, Harper
informed Plaintiff that Kye Meadows (the "warehouseman") "answer[ed] to
Sherman," not Plaintiff. (Controverting SOF at ¶ B(1), (13)-(14)). Absent *any*
indication that Sherman demonstrated the same poor performance for which Plaintiff
was ultimately fired, these complaints simply cannot support a claim of disparate
treatment termination. *Okoye*, 245 F.3d at 514.[5]

This leaves only Plaintiff's account that Harper directed discriminatory
comments at her. Specifically, Plaintiff represents:

- In June 2017 Harper called Plaintiff a "diva … in front of two white
  employees." When Plaintiff "asked him why he would say that," Harper
  responded "Because black girls act like divas." (Controverting SOF at ¶
  B(16)).

- On three or four occasions "Harper openly criticized [Plaintiff's] job
  knowledge," saying things like "[s]he doesn't know what she's doing,"
  and "[s]he don't know what she's talking about." The first instance
  occurred "in the time period of his [Harper's] 'black diva' remark"; the
  last occurred on May 19, 2018. (*Id.* at ¶ B(17)).

- On May 14, 2018, Harper said to Plaintiff that "she should wait on the
  'black people from Baton Rouge because you relate to them more' while
  he was 'better communicating with white people from Mississippi.'" (*Id.*
  at ¶ B(23)).

Plaintiff expressly *concedes* that these comments, while crude, do *not* rise to
the level of direct evidence of discrimination. (Doc. 72 at p. 12). Still, however,
Plaintiff insists that Harper's "remarks may … be properly considered on the prima
facie case." (*Id.*). The Court agrees that the remarks may be *considered*, but finds that

---

[5] Perhaps Plaintiff's complaints vis-à-vis Sherman could support a failure to promote claim.
But, again, Plaintiff has abandoned any such claim. (*See* Doc. 84 at p. 1).

they are *not* sufficient to carry Plaintiff's burden. Quite simply, Harper's infrequent remarks lack the specificity and timing required to establish an inference that Plaintiff's race motivated the decision to fire her. *See Jones v. Overnite Transp. Co.*, 212 F. App'x 268, 273 (5th Cir. 2006) (discussing cases).

In the end, Plaintiff has failed to present the Court any competent evidence showing that after her termination she was replaced by someone outside her protected class, *or* that others similarly situated were treated more favorably than she was. As such, Plaintiff has not carried her burden of establishing a genuine dispute regarding the fourth essential element of her prima facie case. *See Okoye*, 245 F.3d at 512–13. Summary judgment is required. *Geiserman*, 893 F.2d at 793.[6]

### III.   CONCLUSION

This Court has repeatedly admonished that summary judgment is about *evidence*, and that a party that fails to direct the Court's attention to any evidence supporting her claims *cannot* carry her burden of showing a genuine, material dispute (or lack thereof). *See, e.g., Loolara v. Nat'l Flood Ins. Program*, 551 F. Supp. 3d 626, 630 (M.D. La. 2021) (Jackson, J.). Here, at significant risk, Plaintiff failed to present the Court the evidence required to create a genuine dispute necessitating trial.[7]

---

[6] Having determined that Plaintiff cannot prove her prima facie case, the Court does not reach Lumber Liquidators' argument that it fired Plaintiff for a legitimate nondiscriminatory reason—*i.e.*, poor job performance—*or* Plaintiff's rebuttal that poor job performance was a pretext for unlawful race-based termination.

[7] Plaintiff's failure in this regard reflects a pattern of dilatory behavior in this case, as noted by the Court in multiple prior orders denying Plaintiff's belated attempts to supplement the evidentiary record. (*See* Doc. 82 at pp. 3-5; Doc. 93 at p. 3). Obviously, the responsibility for this failure is shared by Plaintiff's counsel. The sum of Plaintiff's conduct has imposed substantial (and unnecessary) time and expense on the defense *and* the Court, and raises serious concerns regarding counsel's ability to competently and diligently fulfill his

Accordingly,

**IT IS ORDERED** that Lumber Liquidators' **Motion For Summary Judgment (Doc. 69)** be and is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs' action be and is hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Lumber Liquidators' pending motions *in limine* **(Docs. 79, 81)** be and are hereby **TERMINATED AS MOOT**.

Judgment shall issue separately.

Baton Rouge, Louisiana, this 19th day of May, 2022

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

professional duties. *See* M.D. La. LR 83(b)(6), La. R. Prof'l Conduct 1.1 (Competence), 1.3 (Diligence). The Court takes this opportunity to remind counsel that admission to practice in federal court is a privilege that may be revoked based on counsel's failure to rise to the standards of practice expected of all attorneys admitted to this District. *See* M.D. La. LR 83(b)(10), (12).

14